Michael MOSSEY, Plaintiff,

v.

CITY OF GALVESTON, TEXAS and
Reagan Williams, Defendants.

Civil Action No. G–99–106.

United States District Court,
S.D. Texas,
Galveston Division.

April 25, 2000.

Andrew Michael Piekalkiewicz, Houston, TX, James S Walker, Walker and Hunt, Houston, TX, Matthew John Milan Prebeg, Glover Lewis, et al., Houston, TX, for plaintiff.

William Scott Helfand, Magenheim Bateman Robinson, Houston, TX, for defendants.

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

KENT, District Judge.

Plaintiff brings this claim against Defendants alleging a violation of 42 U.S.C. § 1983. Plaintiff also introduced a variety of pendant state claims against the City of Galveston under the Texas Tort Claims Act ("TTCA"), Tex.Civ.Prac. & Rem.Code §§ 100.001–101.109 *et seq.*, but those causes of action were subsequently dismissed by Plaintiff. Now before the Court is Defendants' Motion for Summary Judgment, filed January 11, 2000. For the reasons stated below, the Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART.**

### I. FACTUAL SUMMARY

Plaintiff's claims stem from his arrest by Defendant Williams, a police officer employed by the City of Galveston. On the evening of January 16, 1997, Defendant Williams responded to a disturbance call involving Plaintiff's father and a neighbor, Mr. Michael Teel. Upon arriving at the scene, Defendant Williams observed Plaintiff assault Mr. Teel, whereupon Defendant Williams proceeded to arrest Plaintiff. At this point, the facts become hotly disputed. Plaintiff alleges that he pushed Mr. Teel in self-defense and that he complied with Defendant Williams's request to lie face-down on the ground. Resting in a prone position with his arms extended, Plaintiff then argues that rather than simply arrest him Defendant Williams struck Plaintiff in the head with a large flashlight and began launching a series of close-fisted punches to his face. According to Plaintiff, this unprovoked beating briefly knocked him

unconscious. For his part, Defendant Williams rejects Plaintiff's rendition of the facts. He claims that Plaintiff resisted arrest, thereby forcing Defendant Williams to employ more aggressive tactics in subduing Plaintiff. While acknowledging that he wrestled with Plaintiff, Defendant Williams adamantly denies assaulting Plaintiff with either a flashlight or a closed fist.

Bleeding, Plaintiff was handcuffed, placed into Defendant Williams' squad car, and taken to the emergency room to receive medical attention. Plaintiff now submits that he has been diagnosed with a permanent brain injury. After his release from the hospital, Plaintiff filed a formal complaint against Defendant Williams with the City of Galveston Police Department. Officials from the Internal Affairs Division conducted an investigation but ultimately concluded that "there was no demonstrable evidence of excessive force." Consequently, Defendant Williams was not disciplined for the incident. That lead to Plaintiff filing suit in this Court under 42 U.S.C. § 1983 and the Texas Tort Claims Act, claiming arrest without probable cause and the use of excessive force.

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See FED.R.CIV.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. See id. at 248, 106 S.Ct. at 2510. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only dis-

putes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. See id. at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. See id., see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); Dixon v. State Farm Fire & Cas. Co., 799 F.Supp. 691, 693 (S.D.Tex.1992) (noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. See Anderson, 477 U.S. at 255, 106 S.Ct. at 2513.

Procedurally, the party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323, 106 S.Ct. at 2553; see also FED. R.CIV.P. 56(c). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. See Matsushita, 475 U.S. at 585–87, 106 S.Ct. at 1355–56; Wise v. E.I. DuPont de Nemours & Co., 58 F.3d 193, 195 (5th Cir.1995). The Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. See Matsushita, 475 U.S. at 585–87, 106 S.Ct. at 1355–56. However, to meet its burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," but instead, must "come forward with 'specific facts showing that there is a genuine issue for trial.'" Id. at 586–87, 106 S.Ct. at 1355–56 (quoting FED.R.CIV.P. 56(e)).

### B. Plaintiff's 42 U.S.C. § 1983 Claims Against the Individual Defendant

In his Motion for Summary Judgment, Defendant Williams asserts qualified im-

munity as a defense against Plaintiff's claims under Section 1983. The Court must address the question of qualified immunity as a threshold issue because its resolution determines Defendant Williams's immunity from suit; that is, his ability to avoid a trial altogether rather than qualifying for mere immunity from damages. *See Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir.1993).

Qualified immunity shields government officials performing discretionary functions "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). When sued in his individual capacity, a governmental employee is entitled to a presumption of qualified immunity from suit. *See Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir.1990), *abrogated on other grounds by Martin v. Thomas*, 973 F.2d 449 (5th Cir.1992). To overcome this presumption, a plaintiff has the burden to prove that no reasonable, similarly situated official could have considered the conduct of the government official to be lawful, under the circumstances known to him at the time. *See Anderson*, 483 U.S. at 640–41, 107 S.Ct. at 3039–40; *Burns–Toole v. Byrne*, 11 F.3d 1270, 1274 (5th Cir.1994). The reasonableness inquiry of the official's conduct is measured with reference to the law as it existed at the time of the conduct in question. *See King v. Chide*, 974 F.2d 653, 657 (5th Cir.1992). "If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity." *Pfannstiel*, 918 F.2d at 1183.

The Fifth Circuit has recognized that "the qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Mangieri v. Clifton*, 29 F.3d 1012, 1017 (5th Cir.1994) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991)). The Fifth Circuit has also developed a two-step process for the examination of a claim of qualified immunity. The first inquiry is whether Plaintiff has alleged a violation of a clearly established constitutional right. *See Siegert v. Gilley*, 500 U.S. 226, 232–32, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). The next step is to judge the reasonableness of the official's behavior. When the Court has a clear picture of what occurred during an incident giving rise to a qualified immunity defense, the "reasonableness" questions becomes one of law. *See Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir.1993) (acknowledging that qualified immunity should normally be determined by the Court).

### 1. Plaintiff's Claim of Unlawful Arrest Is Barred by Qualified Immunity

An individual has a clearly established right to be free from unlawful arrest. *See Duckett v. City of Cedar Park*, 950 F.2d 272, 278 (5th Cir.1992). An arrest or detention may be unlawful if it is accomplished without due process of law as required by the United States Constitution. *See Baker v. McCollan*, 443 U.S. 137, 144–45, 99 S.Ct. 2689, 2694–95, 61 L.Ed.2d 433 (1979). Police officers are thus required under the Fourteenth Amendment to make a determination of probable cause before performing a custodial arrest. *See Martin v. Thomas*, 973 F.2d 449, 453 (5th Cir.1992); *Fields v. City of S. Houston*, 922 F.2d 1183, 1189 (5th Cir.1991). An officer has probable cause to arrest if, at the time of the arrest, he had knowledge that would warrant a prudent person's belief that the person arrested had already committed or was committing a crime. *See Gladden v. Roach*, 864 F.2d 1196, 1199 (5th Cir.1989).

Here, Plaintiff has not created a fact issue on the question of whether Defendant Williams had probable cause to arrest him for assaulting Mr. Teel. As the facts indicate, Defendant Williams actually observed Plaintiff assault Mr. Teel, there-

by giving rise to Plaintiff's arrest. For his part, Plaintiff acknowledges that he in fact made physical contact with Mr. Teel. Because it is reasonable for Defendant Williams to believe that an offense occurred in his presence, the evidence makes clear that Defendant Williams had probable cause to arrest Plaintiff on charges of assault. *See Hunter v. Clardy,* 558 F.2d 290, 291 (5th Cir.1977) (holding that an arrest for an offense committed in a police officer's presence meets the constitutional requirement of probable cause); *see also United States v. Muniz–Melchor,* 894 F.2d 1430, 1438 (5th Cir.1990) (indicating that the circumstances surrounding the determination of probable cause for an arrest "must be viewed in light of the observations, knowledge, and training of the law enforcement officers involved in [a] warrantless search"). Given the totality of the circumstances, the Court finds that Defendant Williams had probable cause to arrest Plaintiff and did not violate Plaintiff's Fourth Amendment rights. Absent a violation of this constitutional right, Defendants are entitled to summary judgment on Plaintiff's claim of unlawful arrest. Such claims against Defendant Williams are therefore **DISMISSED WITH PREJUDICE.**

*2. Plaintiff's Claim of Excessive Force Is Not Barred by Qualified Immunity*

■■■ Established law clearly provides that Plaintiff has a Fourteenth Amendment right to be free from the use of excessive force by police. "Claims that law enforcement officials have used excessive force in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen ... must be judged by reference to the Fourth Amendment's 'reasonableness' standard." *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). The Court, however, must take care not to substitute its judgment for that of the reasonable officer on the scene. *See id.* at 396, 109 S.Ct. at 1872. The Court's calculus of reasonableness must include allowances for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation. *Id.* at 396–97, 109 S.Ct. at 1872. Thus, the question facing the Court is whether the use of force by Officer Williams was objectively reasonable in light of the circumstances confronting him on the evening of January 16, 1997. *See Ikerd v. Blair,* 101 F.3d 430, 434 (5th Cir.1996) (noting that in such cases, the plaintiff must show (1) at least some injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need, and the excessiveness of which was (3) objectively unreasonable).

■■ Applying these standards, the Court now investigates whether a factual dispute exists regarding whether Defendant Williams's use of force in the arrest of Plaintiff was objectively reasonable. Plaintiff claims that Defendant Williams attacked him unnecessarily while he laid defenseless on the ground. As a result of this allegedly unprovoked assault, Plaintiff claims he suffered permanent brain damage. A review of photographs taken shortly after the incident reveals Plaintiff's head caked with blood. *See Pl.'s Am. Resp. to Defs.' Mot. for Summ.J.Ex. 1.* Defendant Williams, however, paints a much different picture of what transpired. He states that Plaintiff resisted arrest and threatened his safety, thereby necessitating an increased use of force to subdue Plaintiff. In so doing, Defendant Williams acknowledges that he wrestled with Plaintiff and ultimately placed a chock-hold on him—though he adamantly rejects Plaintiff's claim that he struck Plaintiff with either a closed-fist or a flashlight.

Given the diverging nature of the testimony on file, the Court is not in a position to determine, as a matter of law, whether excessive force was used. This issue amounts to a swearing match in the most classic sense; consequently, the Court will leave it to a jury to decide who to believe.

Because the facts necessary to determine whether Defendant Williams's actions were objectively reasonable are in hot dispute and create a genuine issue of material fact, Defendant Williams is not entitled to qualified immunity with regard to Plaintiff's excessive force cause of action. Accordingly, as to this claim, Defendant Williams's Motion for Summary Judgment is **DENIED**.

### C. Plaintiff's 42 U.S.C. § 1983 Claims Against the City of Galveston

■ Plaintiff also brings Section 1983 claims against the City of Galveston. It is well established that a municipality may be liable for the adoption of a policy or custom that leads to a constitutional deprivation. See Monell v. Department of Soc. Servs., 436 U.S. 658, 692–94, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978); Burns v. City of Galveston, 905 F.2d 100, 102 (5th Cir.1990); Morris v. City of Alvin, 950 F.Supp. 804, 806 (S.D.Tex.1997). The demonstration of a failure to train, or improper hiring, retention, and supervision, may be sufficient to establish such a policy or custom. See City of Canton v. Harris, 489 U.S. 378, 387, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989) (opining that "inadequacy of police training may serve as a basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of the persons with whom the police come into contact"); see also Board of County Comm'rs v. Brown, 520 U.S. 397, 117 S.Ct. 1382, 1388–89, 137 L.Ed.2d 626 (1997) (declaring that "[i]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality . . . the plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged"). The actions of the municipality before and sometimes after the event in question shed light on the actual policy or custom in existence.

The Court notes that establishing liability under Section 1983 for failure to properly train police officers, or for improper hiring, supervision, and retention of those officers, is a difficult task. At trial, Plaintiff must show evidence of a policy or custom attributable to the city that caused Plaintiff's injury. See Bennett v. City of Slidell, 728 F.2d 762, 767 (5th Cir.1984) (en banc). More than one instance of constitutional injury is normally required to demonstrate such a policy or custom. See Spiller v. City of Texas City, 130 F.3d 162, 167 (5th Cir.1997). The city is not necessarily liable just because it employs an alleged tortfeasor. See Brown, 520 U.S. at 403–04, 117 S.Ct. at 1388–89. When considering a Motion for Summary Judgment, the Court looks at the facts alleged in a light most favorable to the nonmovant. See Partridge v. Two Unknown Police Officers, 791 F.2d 1182, 1185–86 (5th Cir. 1986). Summary judgment is therefore granted when a reasonable fact-finder, after considering the facts, could only decide a particular issue one way. See Celotex, 477 U.S. at 323, 106 S.Ct. at 2552–53.

#### 1. The City of Galveston Is Entitled to Summary Judgment on the Section 1983 Claim of Unlawful Arrest

■ With regard to Plaintiff's claim of unlawful arrest, the Court has already noted that Plaintiff has introduced insufficient evidence to justify a finding that his arrest was unreasonable. The analysis of Defendant Williams's actions—for the purpose of determining the merits of Plaintiff's claim against Defendant City of Galveston—is in all relevant respects identical to the qualified immunity analysis. Here, Plaintiff has failed to present evidence showing that Defendant Williams did not have probable cause to arrest Plaintiff. Thus, the Court is precluded from reaching the issue of municipal liability on Plaintiff's unlawful arrest claim, as a matter of both law and fact. Accordingly, Defendant City of Galveston is entitled to summary judgment on Plaintiff's claim of unlawful arrest. Such a claim is **DISMISSED WITH PREJUDICE.**

### 2. The City of Galveston Is Entitled to Summary Judgment on the Section 1983 Claim of Excessive Force

On his excessive force claim, Plaintiff has introduced sufficient evidence to justify a finding that Defendant Williams may have used excessive force, and Plaintiff has consequently overcome Defendant Williams's claim of qualified immunity. However, Plaintiff has not offered even remotely enough evidence to overcome summary judgment in favor of Defendant City of Galveston.

■ As noted above, in order for Defendant City of Galveston to be held liable in this case, Plaintiff must show that Defendant Williams's use of excessive force was carried out pursuant to an official municipal policy of some nature. *See Monell*, 436 U.S. at 691, 98 S.Ct. at 2036. The Fifth Circuit has defined an "official policy" for the purposes of Section 1983 municipal liability to be either: (1) a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's law-making officers or by an official to whom the lawmakers have delegated policymaking authority; or (2) a persistent widespread practice of city officials or employees, which, although not authorized by an officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. *See Webster*, 735 F.2d at 841; *Morris*, 950 F.Supp. at 806. With regard to the second prong described, the Supreme Court has held that a single incident normally does not suffice to prove the existence of a municipal custom. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24, 105 S.Ct. 2427, 2436–37, 85 L.Ed.2d 791 (1985) (plurality opinion). In reviewing the facts of this case, the Court finds that Plaintiff has not presented evidence of an "official policy" under these definitions.

■ Having not found a written policy, ordinance, regulation, or decision, Plaintiff instead rests his claims against the City of Galveston on a rather speculative proposition that goes something like this: Because the newly elected Chief of Police for the City of Galveston changed several operating procedures within the Internal Affairs Division, all prior investigations—including the one at issue in this case—necessarily must have been so perfunctory and improper that officers such as Defendant Williams could only interpret them to mean that excessive force taken against criminal suspects would be condoned by officials at the Galveston Police Department. While cleverly argued, Plaintiff's arguments remain unsubstantiated and do not give rise to an inference that the Galveston Police Department had long carried out some type of clandestine operation that permitted police officers to knowingly violate the civil rights of criminal suspects.

Despite having had ample opportunity to investigate whether the Internal Affairs Division formed a moving force behind Defendant Williams's actions, Plaintiff has failed to provide any viable evidence supporting such a claim. In fact, the evidence points in the other direction. It shows that the Galveston Police Department did investigate Plaintiff's claims. And, at the conclusion of the investigation, Defendant Williams was exonerated from any wrongdoing.[1] While Plaintiff points to testimony given by officials working on this investigation that questions whether Plaintiff's injuries were "logically consistent" with Defendant Williams's version of the facts, Plaintiff offers absolutely no evidence proving that the investigation conducted by the Galveston Police Department amounted to a mere pro-forma exercise.

---

1. The Civil Rights Division of the United States Department of Justice recently reached a similar conclusion. *See* Defs.' Supplement to Mot. for Summ. J. Ex. A. ("After carefully considering the information obtained by the FBI as a result of its investigation, we concluded that the evidence is not sufficient to establish a prosecutable violation of the federal criminal civil rights statutes. Accordingly, we have closed our investigation").

Indeed, the fact that an investigation occurred at all shows that the City of Galveston at least had an organizational structure in place to deter police officers from believing that gross constitutional violations of suspects' rights would not result in disciplinary action. What is more, even if the Court would have conducted a more thorough investigation in this case, Plaintiff has failed to produce evidence of prior complaints sufficient to demonstrate that the City of Galveston and its officials ignored previous incidences of police misconduct. More importantly, the Court reiterates that Plaintiff has not adequately shown that this particular investigation formed the moving force behind Officer Williams's alleged misconduct.[2]

In an effort to show that Defendant Williams believed a municipal custom allowed him to violate Plaintiff's rights with impunity, Plaintiff relies on three complaints previously filed against Defendant Williams, which according to Plaintiff, were never investigated. While seemingly relevant, the evidence simply does not substantiate Plaintiff's claim—as Plaintiff has produced no evidence regarding these complaints. Because Plaintiff has failed to present the details surrounding the nature of these alleged complaints, Plaintiff cannot establish any facts showing that the City of Galveston did not investigate or punish Defendant Williams for any previously reported misconduct. In fact, Plaintiff cannot point to a single shred of evidence showing that Defendant had a

history of using abusive and unconstitutional tactics in apprehending suspects, or that the City of Galveston deliberately continued a policy of empowering Defendant Williams to respond to potentially dangerous and explosive situations knowing that he had a history of committing constitutional violations. Under these circumstances, "the mere existence of previous citizens' complaints does not suffice to show a municipal custom of permitting or encouraging excessive force." *Mettler v. Whitledge*, 165 F.3d 1197, 1205 (8th Cir. 1999). Likewise, the record is devoid of any indication that the Galveston Police Department avoided, ignored, or covered up complaints of physical conduct by officers. Instead, the Court is left to speculate about these so-called complaints. As a result, this entire line of reasoning fails to demonstrate a city policy or custom of failing to act or investigate prior complaints of physical abuse by Defendant Williams or any other police officer employed by the City of Galveston.

At the end of the day, Plaintiff's only offer of proof of a policy or custom of conducting negligent investigations of police officers suspected of civil rights violations rests on the fact that upon her election, the new Chief of Police, Kim Schoolcraft, committed herself to improving the organizational structure of the Internal Affairs Division. It is axiomatic that every police chief—or judge for that matter—endeavors to do better than his

---

**2.** Plaintiff's reliance on *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir.1985) is misplaced. *Grandstaff* involved a set of police officers who mistakenly shot and killed an innocent man. In that case, the Fifth Circuit held the municipality liable based on this single incident of misconduct because the municipality's subsequent actions with regard to the officer's "dangerous recklessness" were so inadequate as to prove a "preexisting disposition." *Id.* at 171. The Fifth Circuit has subsequently restricted the holding in *Grandstaff* to the factual setting present in that case. *See, e.g., Coon v. Ledbetter*, 780 F.2d 1158, 1161 (5th Cir.1986) (observing that *"Grandstaff* affirmed a judgment against a Texas city on a highly peculiar set of facts.... The

*Grandstaff* panel emphasized the extraordinary facts of the case, and its analysis can be applied only to equally extreme factual situations"). Here, the injuries sustained by Plaintiff, who may well have been resisting arrest, hardly rises to the level of the "extraordinary factual circumstances" presented in *Grandstaff*—particularly given the absence of any valid evidence suggesting a culture of recklessness at the Galveston Police Department. Furthermore, even if the extraordinary factual circumstances did allow *Grandstaff* to control, Plaintiff has not shown the level of misfeasance necessary for the municipality's post-event conduct to be used to prove the existence of a pre-event policy.

or her predecessor. In this case, there is no evidence on file to even remotely suggest that Police Chief Schoolcraft had improper motives for implementing certain policy changes. Without more, the Court will not question the integrity of her attempts to create a better police department for the citizens of Galveston. Consequently, Plaintiff's claim of excessive force filed against Defendant City of Galveston is hereby **DISMISSED WITH PREJUDICE.**

### III. CONCLUSION

For the reasons set forth above, Plaintiff's claim of unlawful arrest against individual Defendant Williams is **DISMISSED WITH PREJUDICE.** Plaintiff's claims of unlawful arrest and excessive force against Defendant City of Galveston are also **DISMISSED WITH PREJUDICE.** However, the Court does finds that Plaintiff has produced sufficient evidence to overcome individual Defendant Williams's qualified immunity solely with regard to Plaintiff's claim of excessive force. Because Plaintiff has voluntarily dismissed all state-based actions, the only issue left for trial is the claim against Defendant Williams for the use of excessive force.

The parties are **ORDERED** to file no further pleadings on these issues in this Court, including motions to reconsider and the like, unless justified by a compelling showing of new evidence not available at the time of the instant submissions. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**IT IS SO ORDERED.**