**Elizabeth TEAGUE as next friend of C.R.T., a Minor, Plaintiff,**

v.

**TEXAS CITY INDEPENDENT SCHOOL DISTRICT, Defendant.**

**No. CIV.A. G–04–558.**

United States District Court, S.D. Texas, Galveston Division.

Dec. 3, 2004.

Jack D. Ewing, Jr., The Ewing Law Firm, Texas City, TX, for plaintiff.

Jeffrey L. Rogers, Feldman and Rogers, Houston, TX, for defendant.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

KENT, District Judge.

Plaintiff Elizabeth Teague ("Plaintiff") brings this action as next friend of her daughter, C.R.T.[1] Now before the Court is the Motion to Dismiss of Defendant Texas City Independent School District ("Defendant"). For the reasons articulated below, Defendant's Motion is DENIED.

### I.

Plaintiff alleges the following facts in her Complaint, which this Court must accept as true when considering Defendant's Motion to Dismiss. *See Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404, 416 (1969) ("For the purposes of a motion to dismiss, the material allegations of the complaint are taken as admitted."). C.R.T. suffers from Down's syndrome and is mentally retarded. She attends special education classes at Texas City High School. On May 19, 2004, while in the specially-designed classroom for "special needs" students, another student forced C.R.T. into the bathroom and sexually assaulted her. Instead of contacting her parents, school officials escorted C.R.T. into the security office, questioned her, and forced her to disrobe.

Plaintiff alleges that Defendant failed to properly monitor and supervise the special

---

1. Although named in Plaintiff's Complaint, this Court will refer to Plaintiff's minor daughter only by her initials, pursuant to General Order No.2004–11 of the United States District Court, Southern District of Texas.

education students and that Defendant used excessive force when it ordered C.R.T. to disrobe. Plaintiff's sole cause of action is under 42 U.S.C. § 1983.[2] Defendant moves for dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6).

## II.

### A. Standard of Review

Rule 12(b) motions to dismiss should be granted "sparingly and with caution to make certain that the plaintiff is not improperly denied a right to have his claim adjudicated on the merits." 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1349 (3d ed.2004). When considering a motion to dismiss, this Court accepts as true all well-pleaded allegations in the complaint and views them in a light most favorable to the Plaintiff. *See Jenkins*, 395 U.S. at 421, 89 S.Ct. at 1849. Unlike a motion for summary judgment, a motion to dismiss should be granted only when it appears without a doubt that the plaintiff can prove no set of facts in support of the claims that would justify relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957); *Tuchman v. DSC Comm. Corp.*, 14 F.3d 1061, 1067 (5th Cir.1994).

### B. 42 U.S.C. § 1983

42 U.S.C. § 1983 provides injured plaintiffs with a cause of action when they have been deprived of federal rights under color of state law. *See Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir.1998). It provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Defendant makes the following arguments in support of its Motion to Dismiss. First, mere negligence cannot be the basis of a § 1983 claim, so Plaintiff's claims for inadequate supervision fail as a matter of law. Second, Defendant contends it had no duty to protect Plaintiff from harm inflicted by a third party. Third, Plaintiff's excessive force claim fails because there was no physical force used in making Plaintiff disrobe, and because Defendant's actions were not objectively unreasonable. Finally, Plaintiff's claim allegedly fails as a matter of law because Defendant can only be liable under § 1983 if it enacted a policy or custom that led to Plaintiff's constitutional deprivation, and Plaintiff has not alleged the existence of any such policy or custom.

### 1. Negligence as the basis for a § 1983 claim

In *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), a

---

**2.** In Defendant's Motion to Dismiss, it alleges that Plaintiff's negligence cause of action should be dismissed on state sovereign immunity grounds. Under Texas law, a school district is only liable in tort when the injuries arise out of the operation of a motor vehicle. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 101.021, 101.051 (Vernon 1997). However, although Plaintiff's Complaint does allege that Defendant should be liable under § 1983 for failure to properly monitor and supervise the special education students, it does not allege negligence as a cause of action. Accordingly, this Court does not reach the merits of Defendant's sovereign immunity claim because Plaintiff has not alleged negligence as a cause of action.

prisoner slipped on a pillow negligently left on a staircase. He filed a § 1983 suit against the warden who left the pillow on the staircase, claiming that the warden's negligence deprived him of his liberty interest in freedom from bodily injury. The Supreme Court held that "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Id.* at 328, 106 S.Ct. at 663. The Court reasoned that the Fourteenth Amendment's guarantee of due process historically applied only to deliberate decisions of government officials to deprive a person of life, liberty, or property. *See id.* at 331, 106 S.Ct. at 665. The Due Process Clause was intended to "secure the individual from the arbitrary exercise of the powers of government." *Id.* at 331, 106 S.Ct. at 665 (quoting *Hurtado v. California,* 110 U.S. 516, 527, 4 S.Ct. 111, 116, 28 L.Ed. 232 (1884)). The Court declined to make the Fourteenth Amendment "a font of tort law to be superimposed upon whatever systems may already be administered by the States." *Id.* at 332, 106 S.Ct. at 665 (quoting *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976)).

Defendant argues that Plaintiff's § 1983 claim is based on negligence and thus precluded by *Daniels.* This argument fails for two reasons. First, although Plaintiff's sole cause of action is § 1983, Plaintiff has alleged two violations of it. Plaintiff alleges that Defendant (1) failed to properly supervise C.R.T., and (2) used excessive force in making her disrobe. Although "failure to properly supervise" sounds like a negligence claim, it is rather an allegation of systemic failure which more proper-

ly addresses policy. Likewise, there is no negligence basis in Plaintiff's allegation of the use of excessive force. Use of force is a deliberate, not a negligent, act, and under *Daniels,* a government official may be liable under § 1983 for deliberate decisions. Thus, even properly assuming Defendant is correct that *Daniels* precludes any negligence claim, Plaintiff still has viable § 1983 claims for improper supervision policy and for excessive force and dismissal would be improper.[3]

■ The other flaw in Defendant's argument is that it fails to distinguish between suits against government officials and those against government entities. *Daniels* involved a claim against a government *official,* specifically, the warden who left the pillow on the staircase. Plaintiff's instant claim is against a government *entity,* specifically the Texas City Independent School District. The Supreme Court has explicitly recognized that government entities can be liable under § 1983 for failure to act, in very similar circumstances. *See City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) ("[T]he failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable [under § 1983] if it actually causes injury.").[4] Plaintiff has alleged in her Complaint that the Defendant, a local governmental entity, failed to adequately provide for the proper monitoring and supervision of the special education room. Had Plaintiff sued the individual teacher for failure to properly supervise, then *Daniels* would apply and the claim

---

3. Defendant argues that Plaintiff's claim for excessive force fails as a matter of law. This claim is discussed *infra* at II(B)(4).

4. The Court went on to say that failure to act could only subject a local governmental entity to § 1983 liability if it reflected a "deliberate

indifference to the constitutional rights of its citizens." *City of Canton,* 489 U.S. at 392, 109 S.Ct. at 1206. This Court discusses the "deliberate indifference" standard *infra* at II(B)(2).

would be barred. But the school district, a local governmental entity may be liable under § 1983 for failing to act if such failure represents "deliberate indifference to the constitutional rights of its citizens." *See City of Canton*, 489 U.S. at 390, 109 S.Ct. at 1205 A motion to dismiss should be granted only when it appears without a doubt that the plaintiff can prove no set of facts in support of the claims that would justify relief. If Plaintiff proves that Defendant had a policy of understaffing special education rooms, and/or staffing with inadequately trained personnel, that reflected a deliberate indifference to C.R.T.'s constitutional rights, then relief would be justified. Consequently, this Court respectfully declines to dismiss Plaintiff's § 1983 claim.

### 2. The alleged constitutional violation

■ In order to state a valid claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person or entity acting under color of state law. *See Dallas Indep. Sch. Dist.*, 153 F.3d at 215. Defendant argues that Plaintiff's § 1983 claim fails because Plaintiff has not alleged a violation of rights secured by the Constitution or laws of the United States. The Court has already addressed Plaintiff's first claim. Plaintiff also alleges that Defendant used excessive force in making C.R.T. disrobe. Plaintiff has a Fourth Amendment right against "unreasonable searches and seizures." Fed.R.Civ.P. 8(f) requires this Court to construe Plaintiff's pleadings so as to do "substantial justice." Although Plaintiff has not specifically alleged that C.R.T.'s Fourth Amendment rights were violated, her Complaint alleges that Defendant forced C.R.T., a victim of Down's Syndrome, to take off her clothes in front of school officials without the op-portunity to consult with her parents. These are serious allegations and, if true, would genuinely shock the conscience of this Court. It would not comport with substantial justice for this Court to dismiss such claim because of, at most, a technical pleading defect.

Further, while Plaintiff alleges that C.R.T. was sexually assaulted by another student, not an employee, she again claims such abuse occurred as a result of systemi-cally inadequate supervision. C.R.T. has a substantive due process right to bodily integrity. *See Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 445 (5th Cir.1994) (en banc) ("We hold ... that schoolchildren do have a liberty interest in their bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment and that physical sexual abuse by a school employee violates that right."). This Court therefore finds that Plaintiff has alleged at least facially viable claims of a violation of C.R.T.'s rights secured by the Constitution or laws of the United States.

■ Defendant also argues that Plaintiff's "negligent" supervision claim fails because the government has no duty to protect individuals from private violence in the absence of a special relationship. The Constitution protects individuals from the government, but not from other private individuals. Defendant argues that C.R.T.'s substantive due process right to bodily integrity does not extend so far as to encompass violations by a private actor. Consequently, Defendant argues, Plaintiff's § 1983 claim for "negligent" supervision fails because there was no special relationship between C.R.T. and Defendant.

In support of this argument, Defendant cites *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989).

Joshua DeShaney, a small boy, was repeatedly beaten by his father. Although they had full knowledge of Joshua's abuse, the county department of social services did not attempt to remove Joshua from his father's custody. When a severe beating left Joshua with permanent brain damage, he and his mother sued the county department of social services under 42 U.S.C. § 1983, alleging that they deprived Joshua of his liberty without due process of law by failing to intervene. Defendant is correct that the Supreme Court, under those facts, rejected the contention that the government owes a constitutional duty to protect people from the misdeeds of other private actors:

> [N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.... Its purpose was to protect people from the State, not to ensure that the State protected them from each other.... As a general matter, then, we conclude that a State's failure to protect an individual from private violence simply does not constitute a violation of the Due Process Clause.

*Id.* at 195–97, 109 S.Ct. at 1003–04. *However*, the Court articulated an exception to this principle for cases where there is a "special relationship" between an individual and the state:

> It is true that in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals.... [W]hen a State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.

*Id.* at 198–200, 109 S.Ct. at 1004–05.

In this regard, the Fifth Circuit has also addressed sexual abuse of public school students. In *Doe v. Taylor Independent School District*, 15 F.3d 443 (5th Cir.1994) (en banc), the Court articulated a "deliberate indifference" exception to the principle that the state has no affirmative duty to protect its citizens. In *Doe v. Taylor ISD*, a high school biology teacher molested a 15–year old student. She filed a § 1983 claim against him and the school district. She also sued the school's principal and the district's superintendent, alleging that they permitted the abuse. On appeal, the Fifth Circuit held that schoolchildren have a substantive due process right to "bodily integrity;" that physical sexual abuse by a school employee violates that right; and that school officials can be liable for failure to supervise if that failure manifests a "deliberate indifference" to the victim's constitutional rights. *Id.* at 445.

In *Walton v. Alexander*, 44 F.3d 1297 (5th Cir.1995) (en banc), the Fifth Circuit declined to expand *Doe v. Taylor ISD* to include sexual abuse perpetrated by private actors. The plaintiff, Christopher Walton, was a resident student at the Mississippi School for the Deaf. After another student sexually assaulted him, he complained to the superintendent, Alma Alexander. She put Walton and the molester into separate dormitories. However, budget constraints soon forced the school to close one of its dormitories, putting Walton and the molester in the same building. When the molester attacked Walton a sec-

ond time, he sued Alexander under § 1983 for failing to protect him. On rehearing en banc, the Fifth Circuit held that, under *DeShaney*, the superintendent owed Walton no duty to protect him from harm inflicted by third parties. *See id.* at 1299. The Court rejected Walton's argument that he had a "special relationship" with the state, holding instead that a special relationship arises only when a person is "involuntarily confined or otherwise restrained against his will." *Id.*

In *Doe v. Hillsboro Independent School District*, 113 F.3d 1412 (5th Cir.1997) (en banc), the Plaintiff, a 13 year-old student raped by a school janitor, argued that Texas's compulsory attendance laws created a special relationship between her and her school. On rehearing en banc, the Fifth Circuit disagreed:

> We decline to hold that compulsory attendance laws *alone* create a special relationship giving rise to a constitutionally rooted duty of school officials to protect students from private actors.... [C]ompulsory school attendance, in Texas to attend seven hours of programmed education on each school day, does not create the custodial relationship envisioned by *Deshaney[De-Shaney]*. The restrictions imposed by attendance laws are not analogous to the restraints of prisons and mental institutions.

*Id.* at 1415 (emphasis added).

Therefore, the Court carefully notes that for Plaintiff to prevail, she must show either that C.R.T. had a special relationship with Defendant, or that Defendant was deliberately indifferent to her risk of harm. A special relationship exists if C.R.T. was "involuntarily confined or restrained against her will." *Walton*, 44 F.3d at 1299. Texas compulsory attendance laws, Tex. Educ.Code Ann. §§ 25.082, 25.083 (Vernon 1996), by themselves, do not create a special relationship, because a student is not restricted in the same way as a prisoner or mental patient. *See Hillsboro Indep. Sch. Dist.*, 113 F.3d at 1415. However, the express language of *Doe v. Hillsboro ISD* leaves open the possibility that Texas compulsory attendance laws may create a special relationship *in combination with other factors*. *See Hillsboro Indep. Sch. Dist.*, 113 F.3d at 1415 ("We decline to hold that compulsory attendance laws *alone* create a special relationship"). (Emphasis added.)

This Court must respectfully construe all of these cases in the context of this particular plaintiff. C.R.T. is not a typical high school student. As a result of her Down's Syndrome, she suffers from mental retardation. Some Down's Syndrome patients have IQs as low as 35. The Supreme Court has recognized that mental retardation is a mental disability. *See Atkins v. Virginia*, 536 U.S. 304, 306, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) (recognizing that those who are mentally retarded have "disabilities in areas of reasoning, judgment, and control of their impulses" and that, because of these mental disabilities, capital punishment serves no proper penological purpose). Thus, this Court sincerely believes that this case is fundamentally different from *Walton*, where the student had a physical disability, deafness, but no mental disability.

Special needs students with identified intelligence deficiencies such as Down's Syndrome are fundamentally different from all other student groups. These children suffer from clearly defined and perceived mental disabilities, such as mental retardation and/or autism, that profoundly impact their abilities to function in society. Much more so than any other children, they completely lack the skills to fend off unwanted sexual advances or otherwise defend themselves from those who would do

them harm. Moreover, characteristically overly anxious to please persons in authority, they are uniquely unable to quite properly refuse offensive procedures such as a nude search. They are required by Texas compulsory attendance laws to come to school each day for several hours, *in specially segregated and highly structured class environments*. They are not free to leave, or to meaningfully alter this special class environment. They are completely dependent upon those in charge to safeguard their person. This Court will not require these children to put themselves at the mercy of sexual predators and violent evildoers, through systemic deficiencies. Schools *must* recognize the helplessness of these children and take appropriate steps to keep them from harm, and especially not add salt to the wound by such intrusive practices as ludicrous nude searches.

*DeShaney* and its progeny recognize that C.R.T. may have a special relationship with the state of Texas, and thus a valid claim, if she is involuntarily confined as a result of her mental disability. *Doe v. Hillsboro ISD* implies that Texas compulsory attendance laws, in conjunction with C.R.T.'s mental disability, may result in the creation of a special relationship between C.R.T. and Defendant. Therefore, this Court, in its best effort at compliance with and proper respect for applicable precedent, specifically holds that mentally disabled students who attend public school under Texas's compulsory attendance laws, in specially designed and segregated special education classes, are involuntarily confined and thus enjoy a special relationship with their school district. School districts are not "virtual guarantors" of their general population students' safety. *Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 203 (1994). However, this Court respectfully holds that they do have a duty of reasonable care to protect their special education mentally disabled students' sub-

stantive due process right of bodily integrity. A mentally disabled student who is assaulted may recover under § 1983 against the school district if the school violates this duty of care. Accordingly, Defendant's Motion to Dismiss cannot be granted on this ground, and on that basis, again, the Motion is **DENIED**.

*3. Policy*

■ Defendant argues that dismissal is appropriate because Plaintiff has failed to allege the existence of a policy or custom that led to the deprivation of C.R.T.'s constitutional rights. Establishing the liability of a municipality or local governmental entity under § 1983 is a "difficult task." *Mossey v. City of Galveston*, 94 F.Supp.2d 793, 794 (S.D.Tex.2000). Under § 1983, a local governmental entity, such as an independent school district, may be held liable only for acts for which it is "actually responsible." *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 479–80, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986); *Dallas Indep. Sch. Dist.*, 153 F.3d at 216. A local governmental entity "cannot be held liable *solely* because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Rather, a local governmental entity may be held liable under § 1983 only when execution of its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694, 98 S.Ct. at 2018. Generally, only the actions of school district officials with final policy-making authority can subject a school district to liability under § 1983. *See Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1304 (5th Cir.1995). Under Texas law, final policy making authority rests exclu-

sively with the school district's Board of Trustees. *See Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir.1993); Tex. Educ.Code Ann § 11.151 (Vernon 1996). However, the Board of Trustees may delegate final policymaking authority to the District's Superintendent. *See Jett*, 7 F.3d at 1251 ("Under Texas law such policymaking authority rested exclusively with the DISD board of trustees, and there is *no evidence they had delegated it*...") (emphasis added).

■ While it is true that Plaintiff has only generally alleged the existence of a policy or custom, that does not mean that no policy or custom germane to this litigation exists. Discovery has barely commenced, so Plaintiff has not yet had an adequate opportunity to investigate whether Defendant had a policy of understaffing its special education classrooms, inadequately training special education teachers, or allowing for the strip-searching students who complain of sexual abuse. If Defendant does have such policies, then liability would be clearly appropriate. And in due course, Plaintiff may wish to amend her pleadings to allege with more specificity the existence of any or all of such policies or customs. Regardless, dismissal of Plaintiff's Complaint for a technical pleading defect at this early stage would be inconsistent with the procedural mandate that this Court should construe pleadings so as to do "substantial justice." Fed. R.Civ.P. 8(f). This Court respectfully declines Defendant's invitation to do so.

### 4. Use of Excessive Force

■ To prevail on an § 1983 claim for use of excessive force, Plaintiff bears the burden of showing (1) an injury, (2) which resulted directly and only from the use of force that was excessive to the need, and (3) the force used was objectively unreasonable. *See Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir.2001). Defendant argues that Plaintiff's claim for use of excessive force fails as a matter of law, for two reasons. First, Defendant argues that Plaintiff has not alleged that school officials ever touched C.R.T. Therefore, no force was used to conduct the strip-search. Second, Defendant claims that, even if force was used, it was not objectively unreasonable for school officials to conduct a search of C.R.T.'s person without notifying her parents.

Regarding the first argument, Defendant misconstrues the meaning of the word "force." Although excessive force claims *usually* involve physical force, there is no *requirement* that it be so. "Force" can be psychological.[5] If school officials surround a terrified, already assaulted and confused mentally retarded girl and demand, in a threatening or even overly authoritative manner, that she remove her clothing, that would certainly qualify as psychological force. Defendants cite *Bender v. Brumley*, 1 F.3d 271 (5th Cir. 1993) for the proposition that mere allegations of verbal abuse do not present actionable claims under § 1983. Defendant is correct-allegations of verbal abuse do not present actionable claims under § 1983. But Plaintiff is not suing for verbal abuse. Plaintiff is suing because school officials intimidated her daughter, C.R.T., into removing her clothing.

Defendant's other contention, that the force used was objectively reasonable, is absurd. The suggestion that it is objectively reasonable for *school officials*, not properly trained law enforcement or medi-

---

5. Black's Law Dictionary defines "force" as "power, violence, or pressure directed against a person or thing." A subcategory of "force" is "actual force," defined as "force consisting in a physical act."

cal personnel, to strip-search a highly traumatized mentally retarded girl without even giving her the opportunity to consult with her parents flies utterly in the face of decency and common sense. Defendant argues that school officials needed to act quickly to preserve evidence. However, unless the investigating school officials were properly trained in forensics, it is likely that the investigation destroyed or adulterated evidence, rather than preserving it. But more importantly, there was absolutely no justification on these facts for strip-searching C.R.T. without notifying her parents. Defendant vigorously contests Plaintiff's version of the facts, and this Court recognizes that there are always two sides to every story. However, taking the alleged facts as true, as this Court must do when considering Defendant's Motion to Dismiss, the Court finds that it is not objectively reasonable to force a highly traumatized special education student to disrobe without even giving her an opportunity to speak to her parents.

### III.

For the foregoing reasons, Defendant's Motion to Dismiss is in all particulars respectfully **DENIED**.

**IT IS SO ORDERED.**