**Filomena LEO, et al., in their Individual and Official Capacities, Appellants,**

v.

**Iliana TREVINO, et al., Appellees.**

**No. 13–05–516–CV.**

Court of Appeals of Texas, Corpus Christi–Edinburg.

June 8, 2006.

Reconsideration Denied June 11, 2009.

---

4. Maj. op. at 464–65.

5. Maj. op. at 464–65 (emphasis added).

Julian C. Gomez, W. Jeremy Counseller, The Gomez Law Firm, PLLC, Fernando G. Mancias, Law Office of Fernando Mancias, McAllen, for appellants.

Joe Hernandez, Willette & Guerra, L.L.P., McAllen, Charles Willette Jr., Willette & Guerra, L.L.P., Brownsville, for appellees.

Before Chief Justice VALDEZ and Justices RODRIGUEZ and CASTILLO.

## OPINION

Opinion by Justice CASTILLO.

Appellants ("School District Employees")[1] bring this interlocutory appeal pursuant to section 51.014(a)(5) of the Texas Civil Practice and Remedies Code. TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(5) (Vernon Supp.2005). The School District Employees appeal from the trial court's denial of a no-evidence motion for summary judgment based in whole or in part

---

1. Appellants include Filomena Leo, Daniel Villarreal, Cesar Ramirez, Lucercio Flores, Ruben F. Farias, Arturo Gonzalez, Jr., Joe Aguilar, Carmen Ramirez, Elma Garza, Annie Aranguren, Max Diaz, Juan Ochoa, Leonel Peña, Nora Garza, Aida Torres, Luz Alicia Resendez, Lionel Perez, Ruth Winkler, Rosa Cardenas, Salvador Magaña, Rosario Alaniz, Jose Garcia and Max Perez, in their individual and official capacities. All are employees of the La Joya Independent School District ("La Joya ISD").

upon an assertion of immunity. We sustain their issues concerning immunity, reverse the trial court's order, and render summary judgment in favor of School District Employees in their individual capacities. *See City of San Antonio v. Hernandez*, 53 S.W.3d 404, 406 (Tex.App.-San Antonio 2001, pet. denied). We dismiss that portion of the appeal relating to the School District Employees' remaining issue for lack of jurisdiction. *See Bexar County v. Giroux-Daniel*, 956 S.W.2d 692, 699 (Tex.App.-San Antonio 1997, no pet.).

## I. Background

On May 20, 2003, approximately two hundred eighth grade students from Cesar Chavez Middle School, in the La Joya Independent School District ("La Joya ISD"), went on a field trip to the McAllen Athletic Club. Activities included swimming. The School District Employees attended the event to supervise the students. The school district opted not to hire lifeguards for the event. Sometime during the day, eighth-grader Oscar Guadalupe Trevino, Jr., drowned in the swimming pool at the club.

Suit was filed on May 29, 2003, by appellees, Iliana Trevino and Oscar Guadalupe Trevino, individually and as personal representative of the Estate of Oscar Guadalupe Trevino, Jr. ("the Trevinos").[2] Claims against the School District Employees are based upon alleged civil rights violations under title 42 of the United States Code, section 1983; the Trevinos claim that the School District Employees violated Oscar's constitutional substantive due process rights to life, liberty, and bodily integrity. U.S. CONST. amend. XIV; 42 U.S.C.A. § 1983 (West 2003 & Supp.2005).

On October 8, 2004, after extensive discovery in the matter, the La Joya ISD and the School District Employees jointly filed a no-evidence motion for summary judgment, urging that the Trevinos had tendered no evidence of critical elements of their claim, including (1) violation of a constitutionally protected right that was (2) clearly established at the time of the conduct in question and that (3) defendants had acted with deliberate indifference to that right. The trial court order denying the no-evidence motion for summary judgment was signed August 5, 2005. This appeal is brought only by the School District Employees, who contend the following: (1) suit against them in their official capacities is equivalent to suing the La Joya ISD, already a named defendant, and therefore those claims should be dismissed (second issue); and (2) as public officials sued in their individual capacities, the School District Employees are entitled to qualified immunity (third issue) unless the Trevinos establish that they violated "clearly established constitutional law," which the Trevinos have failed to do (first issue). Therefore, School District Employees urge that the trial court erred in failing to grant the no-evidence motion for summary judgment in their favor. Federal substantive law and Texas state procedural law apply to this matter.

## II. Jurisdiction

■ Jurisdiction over this interlocutory appeal is based upon section 51.014(a)(5) of the Texas Civil Practice and Remedies Code and the assertion of qualified immunity. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(5) (Vernon Supp.2005). This statute provides that an interlocutory appeal may be taken from the denial of a

---

**2.** Other defendants, not parties to this appeal, are also named in the suit and include the La Joya ISD, the athletic club and many of its personnel, as well as the company charged with pool services for the club.

motion for summary judgment where the defense of qualified immunity has been raised by individuals who are officers or employees of the state or a political subdivision of the state. *Id.; Houston v. Kilburn,* 849 S.W.2d 810, 811 (Tex.1993) (per curiam).

The Trevinos contend that the School District Employees sought summary judgment on grounds beyond immunity, including (1) whether there was a violation of a federal protected right and (2) whether suit could proceed against both La Joya ISD and the named individuals in their official capacity. The Trevinos urge that, inasmuch as argument was not limited to the issue of immunity, we do not have jurisdiction over the bulk of this appeal. In conjunction with qualified immunity from the section 1983 claims, the Trevinos also contend that we may not properly reach whether or not there was violation of a federal protected right.

### A. Qualified Immunity under Section 1983

■ Claims raised by the Trevinos against the School District Employees are based solely upon alleged violations of constitutionally protected rights of due process. *See* 42 U.S.C. § 1983 (West 2003 & Supp.2005). School District Employees assert that qualified immunity precludes suit against them in their individual capacities for these claims. Government officials performing discretionary functions are clothed with a qualified immunity, shielding them from civil damages liability for violation of a constitutional right as long as their actions could reasonably have been thought to be consistent with the rights they are alleged to have violated. *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Spacek v. Charles,* 928 S.W.2d 88, 92 (Tex.

App.-Houston [14th Dist.] 1996, writ dism'd w.o.j.).

■ The availability of interlocutory appeal to address the defense of qualified immunity does not distinguish between claims brought under federal or state law. Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(5) (Vernon Supp.2005). It is simply available from the denial of a motion for summary judgment "that is based on an assertion of immunity" by an appropriate state actor. *Id.* An assertion of immunity is a defense, rather than an element of the principal cause of action. *Id.*

■ When a federal claim is brought under section 1983, title 42 of the United States Code, availability of qualified immunity as a defense must be assessed pursuant to federal law. 42 U.S.C. § 1983 (West 2003 & Supp.2005); *Doe v. Taylor Indep. Sch. Dist.,* 15 F.3d 443, 450 (5th Cir.1994) (op. on reh'g). Federal courts recognize a qualified immunity for public officials which is analogous although not identical to Texas's official immunity. Qualified immunity to a claim brought under section 1983 protects governmental officers with discretionary authority from liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Ballantyne v. Champion Builders, Inc.,* 144 S.W.3d 417, 428 (Tex.2004) (quoting *Crawford–El v. Britton,* 523 U.S. 574, 588, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998); *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Section 1983 imposes liability for violations of rights protected by the United States Constitution, not for violations of duties of care arising under tort law. *Taylor Indep. Sch. Dist.,* 15 F.3d at 450 (citing *Baker v. McCollan,* 443 U.S. 137, 146, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). Therefore, the threshold inquiry in any section 1983 claim

is whether the plaintiff has been deprived of a right secured by the Constitution. *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *see Taylor Indep. Sch. Dist.*, 15 F.3d at 450 (stating the first step in deciding whether defendants are entitled to qualified immunity is to determine whether Constitutional rights were violated).

### 1. The Burden of Proof Under Section 1983

■■■ Qualified immunity is an affirmative defense which normally carries with it the burden of proof. Generally, a no-evidence motion for summary judgment asserting that a party can prevail on an affirmative defense is not appropriate. *See Keszler v. Mem'l Med. Ctr. of E. Tex.*, 105 S.W.3d 122, 128 (Tex.App.-Corpus Christi 2003, no pet.).

■■■ However, under federal law and section 1983 claims, such is not the case. At the summary judgment stage of a section 1983 action, "a defendant asserting immunity is not required to establish the defense beyond peradventure, as he would have to do for other affirmative defenses." *Cousin v. Small*, 325 F.3d 627, 632 (5th Cir.2003) (per curiam). "The moving party is not required to put forth evidence to meet its summary judgment burden for a claim of immunity. It is sufficient that the movant in good faith pleads that it is entitled to absolute or qualified immunity." *Id.* (quoting *Beck v. Tex. State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir.2000)).[3] "Once the [movant] asserts this affirmative defense, the burden shifts to the plaintiff to rebut

it." *Id.* (citing *Beck*, 204 F.3d at 633–34; *Whatley v. Philo*, 817 F.2d 19, 20 (5th Cir.1987)). Therefore, a no-evidence motion for summary judgment is sufficient to raise this defense.

### 2. Application of Federal Substantive Law

■■■ The Trevinos contend that it is error to apply the federal burden-shifting analysis to assess availability of qualified immunity. They argue that immunity is an affirmative defense under Texas state law, for which School District Employees at all times bore the burden of proof. The Trevinos urge that we should therefore not apply the provisions for burden-shifting set out under federal law, and, consequently, we never reach the question of whether Oscar was deprived of a right secured by the Constitution. However, in any analysis involving section 1983 constitutional due process claims, applicability of the burden-shifting analysis for qualified immunity is a matter of federal substantive law. *Amer. Dredging Co. v. Miller*, 510 U.S. 443, 454, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994).

■■■ "When sued in his individual capacity, a governmental employee is entitled to a presumption of qualified immunity from suit." *Mossey v. City of Galveston*, 94 F.Supp.2d 793, 796 (S.D.Tex.2000). Presumptions (and their effects) and burden of proof are "substantive." *Dick v. New York Life Ins. Co.*, 359 U.S. 437, 446, 79 S.Ct. 921, 3 L.Ed.2d 935 (1959); *see Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20–21, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000) ("[W]e have long held the burden of

---

**3.** Qualified immunity serves to "shield a government official from civil liability for damages based upon the performance of discretionary functions if the official's acts were objectively reasonable in light of then clearly established law." *Thompson v. Upshur Coun-*

*ty*, 245 F.3d 447, 456 (5th Cir.2001). Where a defendant pleads qualified immunity, the burden of proof shifts to the plaintiff. *See Pierce v. Smith*, 117 F.3d 866, 872 (5th Cir. 1997).

proof to be a 'substantive' aspect of a claim."). Although "[i]n earlier times, burden of proof was regarded as 'procedural,' ... [f]or many years, ... it has been viewed as a matter of substance ... [and] cannot be considered a mere incident of a form of procedure." *Amer. Dredging Co.,* 510 U.S. at 454, 114 S.Ct. 981 (citations omitted).

■■ We have jurisdiction over that portion of the appeal relating to qualified immunity to section 1983 claims brought against the School District Employees which allege violations of constitutional rights. *See Univ. of Tex. S.W. Med. Ctr. v. Margulis,* 11 S.W.3d 186, 188 (Tex.2000) (per curiam); *Gross v. Innes,* 988 S.W.2d 727, 729 (Tex.1998) (per curiam). In conjunction therewith, we reject the Trevinos' contention that we have no jurisdiction to consider whether or not there was a violation of a constitutionally protected right, inasmuch as such an inquiry is critical to an evaluation of the existence of qualified immunity under section 1983. *Cousin,* 325 F.3d at 632.

### B. Official Immunity

The Trevinos contend that we have no jurisdiction to consider the trial court's order as it applies to considerations beyond the assertion of an immunity defense. The School District Employees assert in their second issue that we may address contentions in the no-evidence motion for summary judgment that suit against the School District Employees in their official capacities is not viable because it is equivalent to suing the La Joya ISD, already a named defendant.

■■ These contentions are not based upon a defense of immunity, but rather upon an argument that because damages cannot be recovered against these individuals in their official capacities, these claims should have been dismissed. "Suits against a government employee in his or her official capacity are just another way of pleading a suit against the government entity of which the official is an agent. Accordingly, qualified immunity is not at issue when a government employee is sued in his or her official capacity." *Giroux–Daniel,* 956 S.W.2d at 695.

■■ We have no jurisdiction to consider the denial of a no-evidence motion for summary judgment as to claims against the School District Employees in their official capacities. *See id.* We therefore have no jurisdiction to consider School District Employees' second issue on appeal.

### III. Standard of Review

■■ Summary judgment functions to eliminate patently unmeritorious claims and defenses, not to deprive litigants of the right to a jury trial. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 n. 5 (Tex.1979); *Swilley v. Hughes,* 488 S.W.2d 64, 68 (Tex.1972); *Alaniz v. Hoyt,* 105 S.W.3d 330, 344 (Tex. App.-Corpus Christi 2003, no pet.). Here, School District Employees filed a no-evidence motion for summary judgment. This type of motion generally asserts that there is no evidence of one or more essential elements of a claim on which the adverse party will bear the burden of proof at trial. TEX.R. CIV. P. 166a(i); *Alaniz,* 105 S.W.3d at 344; *Scripps Tex. Newspapers, L.P. v. Belalcazar,* 99 S.W.3d 829, 840 (Tex.App.-Corpus Christi 2003, pet. denied).

■■ However, such a motion may also be appropriate where the defense of qualified immunity is raised to a federal claim under federal law.[4] Although the

---

4. If qualified immunity were raised in response to a claim raised under Texas law, a

term "qualified immunity" is sometimes used to describe other types of immunity possessed by government officials, including those sued under the Texas Tort Claims Act, in this case the motion for summary judgment properly refers only to the claims raised under section 1983. *See Giroux–Daniel,* 956 S.W.2d at 694 n. 2. The Trevinos specifically provide in their petition that "these allegations are only brought under 42 U.S.C. § 1983." We have already determined that when section 1983 claims are raised, the presumption arising in conjunction with a claim for qualified immunity is a matter of federal substantive law. *Amer. Dredging Co.,* 510 U.S. at 454, 114 S.Ct. 981. That presumption provides that the moving party is *not* required to put forth evidence to meet its summary judgment burden for a claim of immunity. *Id.; Beck,* 204 F.3d at 633–34 (citing *Salas v. Carpenter,* 980 F.2d 299, 306 (5th Cir.1992)); *see Mossey,* 94 F.Supp.2d at 796. The movant can support its motion by solely relying on the pleadings. *Beck,* 204 F.3d at 634. Accordingly, School District Employees' challenge to the section 1983 claims can properly be raised in a no-evidence motion for summary judgment.

 "An order denying qualified immunity, to the extent it turns on an 'issue of law,' is immediately appealable." *Atteberry v. Nocona Gen. Hosp.,* 430 F.3d 245, 251 (5th Cir.2005) (quoting *Behrens v. Pelletier,* 516 U.S. 299, 311, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996)). The denial of a motion for summary judgment based on qualified immunity grounds falls into that

"small class" of district court decisions which, though short of final judgment, are immediately appealable because they "finally determine claims of right separate from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated."

*Id.* (quoting *Behrens,* 516 U.S. at 305, 116 S.Ct. 834). When reviewing a denial of qualified immunity on an interlocutory appeal, we are restricted to determining "questions of law" and "legal issues." *Atteberry,* 430 F.3d at 251. We do not consider the "correctness of [appellee's] version of the facts." *Id.* We treat the legal question of immunity as "distinct from the merits of the case." *Id.* at 251–52. We review the refusal to grant a motion for summary judgment based on this defense de novo. *Id.* at 252 (citing *Wilkerson v. Stalder,* 329 F.3d 431, 434 (5th Cir.2003)). In applying this standard, we accept "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (citing *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir.1999) (per curiam)).

## IV. Analysis

 The School District Employees urge they are entitled to qualified immunity from the Trevinos' claims, absent a showing of a violation of "clearly established constitutional law." *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034.

Government officials performing discretionary functions are protected from civil liability under the doctrine of qualified

---

traditional summary judgment motion would raise this affirmative defense. Summary judgment for a defendant is proper when the summary judgment evidence negates an essential element of the plaintiff's cause of action as a matter of law or conclusively establishes all elements of an affirmative defense as

a matter of law. *See Black v. Victoria Lloyds Ins. Co.,* 797 S.W.2d 20, 27 (Tex.1990). In such circumstances, the government official would be required to conclusively prove each element of the affirmative defense. *Univ. of Houston v. Clark,* 38 S.W.3d 578, 580 (Tex. 2000).

immunity if their conduct violates no "clearly established statutory or constitutional rights of which a reasonable person would have known."

*Beck,* 204 F.3d at 638. Claims of qualified immunity are reviewed under a two-step analysis. *Atteberry,* 430 F.3d at 253. First, we review whether the plaintiff has asserted the violation of a clearly established constitutional right. *Id.* If so, we then decide whether the defendant's conduct was objectively reasonable. *Id. Atteberry* provides:

> When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense. To discharge this burden, a plaintiff must satisfy a two-prong test. First, he must claim that the defendants committed a constitutional violation under current law. Second, he must claim that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of.

*Id.; see Beck,* 204 F.3d at 638 (citing *Coleman v. Houston Indep. Sch. Dist.,* 113 F.3d 528, 533 (5th Cir.1997)). A preliminary consideration is whether or not the government official was acting within his discretionary as opposed to his ministerial authority at the time of the incident.

**A. Discretionary Authority**

 Qualified immunity is only available when an official acts "within the scope of [his or her] discretionary authority." *Atteberry,* 430 F.3d at 257. In *Atteberry,* as here, the plaintiffs alleged the violation of numerous state statutes which imposed non-discretionary, ministerial duties upon School District Employees, thereby vitiating their defense of qualified immunity. *See id.*

The Trevinos contend that qualified immunity is not available because School District Employees violated former section 22.051 of the Texas Education Code,[5] renumbered and currently codified as section 22.0511.[6] This statute provides that a professional employee of a school district, defined to include teachers, counselors, nurses, and administrators, is not personally liable for any act that is:

> ... incident to or within the scope of the duties of the employee's position of employment and that involves the exercise of judgment or discretion on the part of the employee, *except* in circumstances in which a professional employee uses excessive force in the discipline of students or negligence resulting in bodily injury to students.

Tex. Educ.Code Ann. § 22.0511 (Vernon Supp.2005) (emphasis added).[7]

---

5. The Trevinos indicate in their petition that this is a "pre-HB4 case." *See* Act of May 27, 1995, 74th Leg., R.S., ch. 260, § 1, section 22.051,1995 Tex. Gen. Laws 2207, 2283.

6. Tex Educ.Code Ann § 22.0511 (Vernon Supp.2005). *See* Act of June 2, 2003 (also known as "HB4"), 78th Leg., R.S., ch. 204, § 15.01, 2003 Tex. Gen. Laws 847, 890; Act of May 29, 2003, 78th Leg. R.S. ch. 1197, § 1, 2003 Tex. Gen. Laws 3404.

7. The immunity afforded by section 22.0511 of the education code requires that the person asserting it establish four elements: (1) he or she is a professional employee of a school district, (2) acting incident to or within the scope of duties, (3) which involve the exercise of judgment or discretion, and (4) are not within the stated exceptions. *See Williams v. Chatman,* 17 S.W.3d 694, 699 (Tex.App.-Amarillo 1999, pet. denied). However, in their petition, the Trevinos couch all their claims under section 1983. *See* 42 U.S.C. § 1983 (West 2003 & Supp.2005). They allege that qualified immunity does not apply because the employees' negligent discipline of Oscar resulted in bodily injury. That negligence is alleged to include (1) failure to discipline Oscar for being in the pool without

"Discretionary authority exists when the law does not specify the precise action that the official must take." *Finlan v. Dallas Indep. Sch. Dist.*, 90 S.W.3d 395, 409 (Tex.App.-Eastland 2002, pet. denied) (citing *Davis v. Scherer*, 468 U.S. 183, 196 n. 14, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984)). "An act is discretionary under Texas law if it requires personal deliberation, decision, and judgment." *Id.* (citing *Jolly v. Klein*, 923 F.Supp. 931, 948 (S.D.Tex.1996)); *see Downing v. Brown*, 935 S.W.2d 112, 114 (Tex.1996) (per curiam). By contrast, an act is ministerial "where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Downing*, 935 S.W.2d at 114 (quoting *City of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex.1994)); *Rosencrans v. Altschuler*, 161 S.W.3d 517, 521 (Tex.App.-Eastland 2004, no pet.). Ministerial actions require obedience to orders or the performance of a duty to which the actor has *no choice*. *Rosencrans*, 161 S.W.3d at 517 (emphasis added). Additionally, the claims in issue here, although couched solely in terms of violation of constitutional rights, include allegations that the School District Employees committed those violations because they failed to properly supervise and/or discipline Oscar on the field trip.

> In our view, maintaining classroom discipline involves personal deliberation, decision and judgment. Moreover, ... teachers' responsibilities [are not defined] with such precision to leave nothing to the exercise of a teacher's judgment or discretion.

*Downing*, 935 S.W.2d at 114. The contents and substance of a discipline management plan, selection of disciplinary techniques, evaluation of which student misconduct should result in disciplinary sanctions, decisions as to how or when to discipline students or to refer them to higher administrative personnel, and other such decisions are "routinely" left to teachers, and "require the use of professional judgment and discretion." *Id.* Moreover, the fact that a teacher is required to attend an event, including a field trip, does not alter the fact that this supervision and discipline lie within discretionary authority. *Williams v. Chatman*, 17 S.W.3d 694, 699 (Tex.App.-Amarillo 1999, pet. denied). Even where it is undisputed that there was a "mandatory duty to supervise," the "duty to supervise involves the exercise of judgment or discretion." *Id.* at 700 (concluding that qualified immunity can apply to

supervision, (2) negligent discipline of Oscar in a manner that failed to prevent his drowning, (3) negligent discipline of Oscar for failing to make him stay with other students at all times, and (4) negligent discipline of Oscar for failing to require him to be in a proper location at the club at all times. The Trevinos also contend in their petition that immunity from liability does not attach based upon other duties derived from state law that allegedly involve mandatory or ministerial activities, including: (1) supervisory and disciplinary responsibilities under education code sections 37.008(h) (dealing with disciplinary alternative education programs) and 37.0021(d) (dealing with confinement, restraint, seclusion, and time-outs for students receiving special education services), (2) the duty to re-

move a child from or not place him in a situation that involves substantial risk of immediate harm under section 261.001 of the family code, and (3) the reporting of child abuse or neglect, the duty not to adversely affect his learning, physical or mental health or safety, and not to physically mistreat him under title 19, sections 61.1051, 247.2 and 242.15 of the administrative code. *See* Tex Educ.Code Ann. §§ 37.0021(d), 37.008(h) (Vernon Supp.2005); Tex. Fam.Code Ann. § 261.001 (Vernon Supp.2005); 19 Tex. Admin. Code Ann. §§ 61.1051, 247.2, 242.15 (2005). We note that, under the facts of the case as set out in the Trevinos' pleadings, Oscar was not then a special education student, a student being subjected to discipline, or a student at risk of child abuse.

claims related to failure to properly supervise). We conclude the School District Employees were acting within the scope of their discretionary authority at the time of the incident.

## B. Constitutional Violation

■■■■■■ The first prong of any analysis of the availability of qualified immunity requires the establishment of the violation of a "clearly established right." *Beck,* 204 F.3d at 638.

> [The due process clause of the Fourteenth Amendment] is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.

*DeShaney v. Winnebago County Dept. of Social Servs.,* 489 U.S. 189, 196, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). The due process clause "does not require the State to provide its citizens with particular protective services, [and] it follows that the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them." *Id.* at 196–97, 109 S.Ct. 998. As a general matter, a state actor's failure to protect an individual against private violence simply does not constitute a violation of the due process clause. *Id.*

Nevertheless, there are recognized exceptions to this general rule, including (1) the "special relationship" exception and (2) the "state created danger" exception. In conjunction with these exceptions, the Trevinos urge that the School District Employees were "deliberately indifferent" or conducted improper supervision.

## 1. Special Relationship Exception

■■■■■ The "special relationship" exception arises only where "the state, by affirmative exercise of power, has custody over an individual involuntarily or against his will." *Walton v. Alexander,* 44 F.3d 1297, 1303 (5th Cir.1995) (en banc). Any "affirmative duty to protect arises not from the State's knowledge of an individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." *DeShaney,* 489 U.S. at 200, 109 S.Ct. 998.

> In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the "deprivation of liberty" triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.

*Id.* In *Walton,* a special relationship was found to exist because (1) the child attended a boarding school with twenty-four hour custody of the student, (2) the student was deaf and lacked basic communications skills, (3) the student was obviously not free to leave while he lived at the school, and (4) economic realities forced most Mississippi families with deaf children to send their children to the school. *Walton,* 44 F.3d at 1305. The court found that the residential special education program created a significant custodial component wherein Walton was dependent on the school for his basic needs and lost a substantial measure of his freedom to act. *Id.* Such is not the case here.

■■■■ Indeed, the courts consistently "decline to hold that compulsory attendance laws alone create a special relation-

ship giving rise to a constitutionally rooted duty." *Doe v. Hillsboro Indep. Sch. Dist.,* 113 F.3d 1412, 1415 (5th Cir.1997) (en banc).

> We join every circuit court that has considered the issue in holding that compulsory school attendance, in Texas to attend seven hours of programmed education on each school day, does not create the custodial relationship envisioned by *DeShaney.* The restrictions imposed by attendance laws upon students and their parents are not analogous to the restraints of prisons and mental institutions.

*Id.* Moreover, "[i]t is well-settled that a state's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Leffall v. Dallas Indep. Sch. Dist.,* 28 F.3d 521, 526 (5th Cir.1994) (quoting *DeShaney,* 489 U.S. at 197, 109 S.Ct. 998) (rejecting claims that the state was categorically obligated to provide a student, who was injured in a random shooting, with protection from injury outside the school dance). Importantly,

> Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. To state a cause of action under § 1983 for violation of the Due Process Clause, plaintiffs must show that they have asserted a recognized liberty or property interest within the purview of the Fourteenth Amendment, and that they were intentionally or recklessly deprived of that interest, even temporarily, under color of state law.

*Taylor Indep. Sch. Dist.,* 15 F.3d at 450 (citations omitted). Such due process rights have been found to have been violated where a teacher lashed a second-grade student to a chair for the better part of two days, *see Jefferson v. Ysleta Indep.*

*Sch. Dist.,* 817 F.2d 303, 305 (5th Cir.1987), and where corporal punishment was inflicted in a public school in an arbitrary or capricious manner, "wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning." *Fee v. Herndon,* 900 F.2d 804, 808 (5th Cir.1990).

"The special relationship doctrine is properly invoked in cases involving harms inflicted by third parties, and it is not applicable when it is the conduct of a state actor that has allegedly infringed a person's constitutional rights." *Leffall,* 28 F.3d at 529 (citing *Taylor Indep. Sch. Dist.,* 15 F.3d at 450). No constitutional due process rights under section 1983 are triggered absent the type of custodial "special" relationship that infringes on rights. *See DeAnzona v. City and County of Denver,* 222 F.3d 1229, 1234 (10th Cir. 2000), which involved the drowning of a five-year-old participating in a summer day-camp program. An inadequate number of counselors were supervising the children, in violation of state requisites. *Id.* at 1233. Plaintiffs in that case alleged similar violations of constitutional rights; some of the defendants argued they were entitled to qualified immunity because there had been no showing of the violation of a clearly established right. *Id.* at 1233–34.

As here, the *DeAnzona* plaintiffs alleged inadequate or no training, inadequate provision of cell phones, no requirement that persons participating be able to swim, and inadequate system of supervision and other failures. *Id.* The court nevertheless reiterated that a plaintiff "must show involuntary restraint by the government to have a claim under a special relationship theory; if there is no custodial relationship there can be no constitutional duty." *Id.* at 1234 (citing *DeShaney,* 489 U.S. at 197, 109 S.Ct. 998). Because schools do not provide for a

child's basic needs, school children do not have the requisite "special relationship" with the government. *Id.*[8] Similarly, in *Bradberry v. Pinellas County*, 789 F.2d 1513, 1517 (11th Cir.1986), in issue was the federal court's dismissal of a claim brought under section 1983 subsequent to a drowning, in which allegations included inadequate training of lifeguards. The court observed:

> [A] local governmental body does not deprive a person of his right to life for purposes of 42 U.S.C. § 1983 when it grossly negligently trains one of its agents.... The Constitution, as opposed to local tort law, does not prohibit grossly negligent rescue attempts nor even the grossly negligent training of state officers. Rather, it prohibits the deprivation of life, liberty, or property without due process of law. Although the state might be prohibited by the Due Process Clause from actively taking the life of a citizen through grossly negligent behavior, we do not believe that due process is implicated when the state fails to help someone already in danger.... We decline to take such an extreme step.

*Id.* at 1517; *see Rankin v. City of Wichita Falls, Texas*, 762 F.2d 444, 449 (5th Cir. 1985) (involving a complaint for grossly negligent customs and practices and safety deficiencies that resulted in a death). The *Rankin* court found no cause of action under section 1983 because the complaint failed to allege "the abuse of any peculiar authority or obligation held by the government," or the "sort of abuse of government power necessary to elevate an ordinary tort claim to constitutional status." *Ran-*

*kin*, 762 F.2d at 449. We similarly decline to take such a step, and conclude there was no special relationship of the requisite type to create a constitutional duty on the part of the School District Employees to safeguard Oscar against potential harm.

## 2. State–Created Danger Exception

The Fifth Circuit has never adopted the state-created danger exception for claims brought under section 1983. *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 537 (5th Cir.2003). Nevertheless, it recognizes the elements of the doctrine: "a plaintiff must show the defendants used their authority to create a dangerous environment for the plaintiff and that the defendants acted with deliberate indifference to the plight of the plaintiff." *Id.* at 537–38 (quoting *Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 201 (5th Cir.1994)). The "environment created by the state actors must be dangerous; they must know it is dangerous; and ... they must have used their authority to create an opportunity that would not otherwise have existed for the third party's crime to occur." *Id.* at 538 (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 585 (5th Cir.2001)).

The sixth circuit outlines three important requirements that must be satisfied before the state-created danger exception is applicable: an affirmative act that creates or increases the risk, a special danger to the victim as distinguished from the public at large, and the requisite degree of state culpability. *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 464 (6th Cir.2006). As to the first prong, "[l]iabili-

---

8. *DeAnzona* further observed that "in order to overcome the qualified immunity of a supervisor, a plaintiff must show that the defendant-supervisor took deliberate action in directing the constitutional violation, or had actual knowledge of the violation and allowed the violation to continue." *DeAnzona v. City and County of Denver*, 222 F.3d 1229, 1234 (10th Cir.2000). The court stated that the "better approach" is "to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all." *Id.*

ty under the state-created-danger theory is predicated upon affirmative acts by the state which either create or increase the risk that an individual will be exposed to *private* acts of violence." *Id.* (emphasis added) (noting numerous instances where claims were rejected because the challenged conduct either was not an affirmative act at all or did not create or increase the risk of private violence to the plaintiff). In addition to the affirmative act, for a "special danger" to exist, "the state's action [must have placed] the victim specifically at risk, as distinguished from a risk that affects the public at large." *Id.* at 468 (noting this is a "high bar"). Even where this element may be satisfied, a plaintiff must still show that "state must have known or clearly should have known that its actions specifically endangered an individual." *Id.* at 469. This requires egregious conduct rising to a level of "deliberate indifference;" this "deliberate indifference" is equated with "subjective recklessness." *Id.* This means that the official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and

*he must also draw the inference."* *Id.* (emphasis added). The plaintiff must demonstrate that the state official acted with culpability clearly beyond that of mere negligence. *McClendon v. City of Columbia,* 305 F.3d 314, 324 (5th Cir.2002) (en banc) (per curiam). "Only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Id.* at 325 (citing *County of Sacramento v. Lewis,* 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)). The behavior must rise to a level that "shocks the conscience;" the due process guarantee "does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." *Id.* (citing *Lewis,* 523 U.S. at 848, 118 S.Ct. 1708). "Liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Id.*[9]

■ The Trevinos contend that the failure of the School District Employees to properly monitor and supervise the situation was so egregious and grossly negligent that it did amount to deliberate indifference to Oscar's constitutional rights under section 1983.[10] However, "to act

9. *See Hart v. City of Little Rock,* 432 F.3d 801, 805 (8th Cir.2005) ("The Due Process Clause's guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm[,] and does not transform every tort committed by a state actor into a constitutional violation.") (citations omitted); *Pena v. De-Prisco,* 432 F.3d 98, 112 (2d Cir.2005) ("The Fourteenth Amendment is not a 'font of tort law.' It does not provide a comprehensive scheme for determining the propriety of official conduct or render all official misconduct actionable.") (citations omitted); *Rivera v. Rhode Island,* 402 F.3d 27, 37–38 (1st Cir. 2005) ("[M]erely rendering a person more vulnerable to risk does not create a constitutional duty to protect ... [and] alleging state actions which render the individual more vulnerable to harm, under a theory of state created danger, cannot be used as an end run around *DeShaney's* core holding.") (citing *De-*

*Shaney v. Winnebago County Dept. of Social Servs.,* 489 U.S. 189, 200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989)).

10. In response to School District Employees' no-evidence motion for summary judgment, the Trevinos tendered evidence to show the following: (1) the school approved and planned the field trip; (2) the principal was aware that swimming, one of the available activities, could be dangerous and that a drowning was a "possibility;" (3) the day before this trip, the seventh graders took a similar trip and one student allegedly "nearly drowned;" (4) school officials were advised and were therefore aware of the "near drowning;" (5) the principal nevertheless determined that the eighth grade field trip would go forward to the same facility the next day; (6) Oscar did drown; (7) the principal opted not to secure lifeguards for the event or to conduct a headcount at intervals during the

with deliberate indifference, a state actor must know [of and disregard] an excessive risk to [the victim's] health or safety." *Id.* (citing *Ewolski v. City of Brunswick*, 287 F.3d 492, 513 (6th Cir.2002); *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). The court in *McClendon* concluded that while conduct of the officer in question was certainly "inadvisable," there was no evidence in the record suggesting that he acted with knowledge that his conduct would pose a threat to the plaintiff's safety, and in the circumstances, "no rational trier of fact could find that [he] acted with any level of culpability beyond mere negligence." *Id.* There was therefore no violation of substantive due rights and the

officer was entitled to summary judgment on the grounds of qualified immunity. *Id.*

■ Here, we are faced with allegations that, if true, could certainly be found by a rational trier of fact to constitute negligence. However, to say that the conduct constitutes "deliberate indifference" would require us to conclude that the School District Employees knew of and deliberately disregarded an excessive risk to the Oscar's health or safety. *See id.* at 324. We cannot conclude that the conduct was so severe as to reach the level of "shocking the conscience" contemplated by the Supreme Court. *See Farmer*, 511 U.S. at 837, 114 S.Ct. 1970.[11] We further decline to do so where the Fifth Circuit has consistently recognized:

---

day; (8) school officials did not learn Oscar was missing until several hours after he died, and only after a lengthy search was he found in the swimming pool; (9) the school district had never conducted in-service training or special safety training for dealing with swimming or other types of field trips; and (10) no additional safety procedures were put in place in the wake of the "near-drowning" on the preceding day.

11. We agree that in certain instances, supervisors can be liable for "gross negligence" or "deliberate indifference" to affirmative violations by their subordinates. *Taylor Indep. Sch. Dist.*, 15 F.3d at 452 (citing *Hinshaw v. Doffer*, 785 F.2d 1260, 1262 (5th Cir.1986) (establishing a three-part test for supervisory liability requiring a plaintiff to show (a) failure to supervise, (b) a causal connection between the failure to supervise or train and the plaintiff's rights, and (c) that the failure to supervise or train amounted to gross negligence or deliberate indifference)). Nevertheless, fundamental to this analysis is an initial *affirmative* violation of the plaintiff's constitutional rights by a state actor. *Id.*

In *City of Canton v. Harris*, 489 U.S. 378, 388–89, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), the Supreme Court held that a municipality could be responsible in certain circumstances under section 1983 for a failure to train its employees that resulted in the viola-

tion of a plaintiff's right to receive necessary medical attention while in police custody. *Id.* at 381, 109 S.Ct. 1197. Again, however, the duty arose because of the state's affirmative exercise of power over the individual's freedom (i.e., the individual was in custody). *Id.* Extension of that duty beyond such circumstances is rejected. *See Benavides v. Santos*, 883 F.2d 385, 387–88 (5th Cir.1989) (finding it proper to dismiss a complaint based on section 1983 allegations that jail supervisors were callously indifferent or grossly negligent in failing to protect jailers from injury when inmates attempted to escape).

> The affirmative duty to protect prisoners ... arises only because the state has, by an affirmative exercise of power, so restrained the prisoner's liberty that he cannot care for himself; prison guards and jailers, on the other hand, are simply employees who are under no compulsion to submit to unsatisfactory working conditions and may quit whenever they please.

*Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 528 (5th Cir.1994) (citing *Benavides*, 883 F.2d at 388). The due process clause "does not guarantee ... a workplace free from unreasonable risks of harm." *Id.* (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 128, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) (rejecting claims that the due process clause be interpreted to impose federal duties analogous to those traditionally imposed by state tort law)).

A state actor's failure to alleviate "a significant risk that he should have perceived but did not," while "no cause for commendation," does not rise to the level of deliberate indifference.

*McClendon,* 305 F.3d at 326 n. 8 (citing *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970).[12] We decline to find that the requisites for a state-created danger exception have been satisfied.

■■■■ We are cognizant of the Trevinos' argument that liability should be imposed based on a policy of inaction and deliberate indifference which resulted in a deprivation of Oscar's "constitutional" right to life. We have already rejected the argument that the conduct involved by the individual School District Employees constituted "deliberate indifference" as that term is understood by the United States Supreme Court and the Fifth Circuit Court of Appeals. *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970; *McClendon,* 305 F.3d at 326. We further note:

> Respondeat superior is not a proper basis for liability under § 1983. Nor can the liability of supervisors be based solely on the right to control employees, or "simple awareness of employees' misconduct." Furthermore, "a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.' At a minimum a plaintiff must show that the [supervisor] at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." ... [Further, a] prerequisite of supervisory liability under § 1983 is un-

constitutional conduct by a subordinate of the supervisor.

*McQueen,* 433 F.3d at 470 (citations omitted).

■■■■ School officials performing discretionary functions are protected from civil liability under the doctrine of qualified immunity unless there is the violation of a clearly established constitutional right. *Beck,* 204 F.3d at 638. Here, we have neither the requisite custodial relationship nor a state-created danger that would open the door to any exception to this general rule. We conclude that the School District Employees properly raised a good faith plea of entitlement to qualified immunity under section 1983, and that, pursuant to federal substantive law, they were not required to put forth evidence in support of that claim. *Cousin,* 325 F.3d at 632 (citing *Beck,* 204 F.3d at 633). Once the School District Employees raised this affirmative defense, the burden shifted to the Trevinos to rebut it. *Id.* The School District Employees are entitled to qualified immunity from the Trevinos' claims, absent a showing of a violation of "clearly established constitutional law." *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034; *Beck,* 204 F.3d at 638. We conclude that the Trevinos have failed in their burden to show a violation of clearly established constitutional law.

## C. Reasonableness of Conduct

Claims of qualified immunity are reviewed under a two-step analysis. First, we review whether the plaintiff has asserted the violation of a clearly established constitutional right. Only if we find such a violation do we then consider whether the defendant's conduct was objectively reasonable in light of the constitutional right.

---

**12.** We note that this is not a situation where children were left to their own devices to enter the pool completely unattended or unsupervised. Such conduct, in this context, might more closely equate to the "deliberate indifference" contemplated by *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

*Beck,* 204 F.3d at 638 (citing *Coleman v. Houston Indep. Sch. Dist.,* 113 F.3d 528, 533 (5th Cir.1997)). Because we have found no such violation, we do not consider reasonableness of the conduct. We sustain the School District Employees' first and third issues on appeal.

## V. Conclusion

We sustain School District Employees' first and third issues concerning immunity, reverse the trial court's order, and render summary judgment in favor of the School District Employees in their individual capacities only. *See Hernandez,* 53 S.W.3d at 406. We dismiss that portion of the appeal dealing with the School District Employees' second issue, relating to claims against them in their official capacities, concluding we do not have jurisdiction over it. *See Giroux–Daniel,* 956 S.W.2d at 699.