

## COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

---

### NO. 2-09-038-CV

---

DARREN B. SWAIN                                                        APPELLANT

V.

CORPORAL JASON HUTSON,                                                 APPELLEES
OFFICER DORA DEWALL,
SERGEANT DANIEL HENNING,
COURT CLERK NORMA WILLIAMS,
JUDGE STEWART MILNER,
JUDGE ROSALIA MADDOCK,
AND DOES 1–5

------------

### FROM THE 48TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### Introduction

Appellant Darren B. Swain, appearing pro se, appeals the dismissal of his claims against appellees—a number of employees of the City of Arlington—Corporal Jason Hutson, Officer Dora Dewall, Sergeant Daniel

---

[1] *See* Tex. R. App. P. 47.4.

Henning, Court Clerk Norma Williams, Judge Stewart Milner, Judge Rosalia Maddock, and Does 1–5. Appellant asserts in four issues that the trial court improperly dismissed his federal claims for the deprivation of his civil and constitutional rights. We affirm in part and reverse and remand in part.

## Background

**Facts alleged in appellant's petition**

On August 30, 2006, appellant parked his rental car in the parking lot of a vacant restaurant in Arlington after one of the two women in the car spilled a soft drink. While all three individuals were standing outside of the car, Arlington Police Department (APD) Officer Dora Dewall arrived on the scene and began to investigate. Later, APD Officer Jason Hutson arrived to assist in the investigation.

At some point, Officer Hutson, who knew the two women who were with appellant, threw appellant up against the rental car and began to search him. Officer Hutson found sealed samples of Protronix and Levitra in appellant's pockets;[2] the samples had been given to appellant by his physician. The officers arrested appellant for possession of dangerous drugs and also cited him

---

[2] According to appellant's petition, Protronix suppresses stomach acid, and Levitra helps patients with erectile dysfunction.

for making an offer to buy and sell goods or services on city property.[3]  After his release through bail on the night of his arrest, appellant went to a wrecker service to reclaim his rental car, but his drug samples and a number of cellular telephone "SIM" cards, valued at $500, were unaccounted for.

Over the next few months, appellant attempted on several occasions to reclaim his drug samples and "SIM" cards from the police and obtain copies of the charges, police reports, and other documents and information related to his arrest from other city officials, with only limited success.  Appellant received an additional ticket in the mail on January 3, 2007, charging him with a third offense, itinerant vending without a license, arising out of the events of August 30, 2006.

On February 1, 2007, Arlington Municipal Court Judge Stewart Milner presided over appellant's bench trial on the charge of offering to buy or sell goods or services on city property.  Judge Milner found him guilty and imposed a total monetary punishment of $173.  On February 20, 2007, after an alleged ex parte hearing between the judge and the prosecutor, the judge dismissed the charge for possession of dangerous drugs.

---

[3] It is unclear from reading appellant's petition what the police thought appellant was attempting to buy or sell.

On March 2, 2007, appellant went to Arlington Municipal Court Clerk Norma Williams to pay a bond so he could appeal his conviction for offering to buy or sell on city property. Initially, Williams refused to accept payment, and although she eventually accepted a certified check in payment of the bond, a Tarrant County Criminal Court later dismissed appellant's appeal because it found that the appeal bond was filed too late.

By May 2, 2008, appellant's trial on the itinerant vending charge had not occurred; thus, appellant filed a motion to dismiss for the denial of his right to a speedy trial. After appellant attempted to gain more information about the charge from city officials, on July 17, 2008, almost two years after the underlying event occurred, a jury in Arlington Municipal Judge Rosalia Maddock's court found appellant guilty. Appellant has separately appealed his conviction for the itinerant vending charge.

**Procedural history**

Because of these events, appellant filed suit against those whom he believed were responsible for his perceived injustices, alleging state law intentional torts and violations of his federal constitutional rights. Appellant sued under theories of assault, battery, unlawful search, false arrest, false imprisonment, fraud, malicious prosecution, "institution of ex post facto charges," and violations of due process and the right to a speedy trial.

In the first numbered paragraph of the petition, appellant asserted that he was bringing his claims "under the various applicable laws of the State of Texas and Sections 42 U.S.C. 1983 and 1985 of the United States Code." The petition contained eight distinct claims for relief related to various aspects of the facts detailed above, and each of these claims sought relief under both state and federal law. Specifically, appellant stated the legal basis for each respective claim as: (1) "[t]hese facts also give rise to plaintiff's claims against Hutson under 42 U.S.C. 1983 and 1985" and "pursuant to Texas and Federal law"; (2) "[t]he facts of this pretextual arrest give rise to Swain's claims of false arrest and violation of his civil and constitutional rights"; (3) "[t]hus, these facts and circumstances give rise to Swain's state law claims of malicious prosecution and his Federal law claims of violation of his civil and constitutional rights"; (4) "[a]ctions of all of the [Arlington] employees involved give rise to Swain's state law claims of false imprisonment and . . . to his Federal law claims that his civil and constitutional rights were violated"; (5) "[t]his action by functionaries of [Arlington] was performed under color of law in violation of Swain's civil and constitutional rights and violated his protections under state law"; (6) "these actions . . . give rise to Swain's claims of violation of his civil and constitutional rights and his rights under state law"; (7) "[b]ecause the actions claimed of are not discretionary nor constitute judicial actions to which

5

immunity extends but are procedural actions for which there is no immunity, Swain's claims of violation of his due process rights under the protections of state and Federal statutes and under the state and United States Constitutions were violated under color of law"; and (8) "Swain believes that these deni[als] were clearly unlawful and conducted . . . in a manner that violated both his state and Federal civil and constitutional rights."

Arlington filed a motion to dismiss its employees under section 101.106(e) of the civil practice and remedies code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.106(e) (Vernon 2005) (stating that if a "suit is filed under [the Texas Tort Claims Act] against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit"). However, Arlington's motion to dismiss its employees did not refer to appellant's federal claims.

Before the trial court ruled on Arlington's motion, appellant nonsuited Arlington in an attempt to prevent the applicability of section 101.106(e) and to proceed only against the employees. Appellant also filed a response to Arlington's motion; his response argued that he had "made a lawful election of remedies" by nonsuiting Arlington. Another portion of the response stated that appellant's case "was brought under 42 U.S.C. §§ 1983 and 1985," and the response contained other references to appellant's federal claims.

6

The trial court granted Arlington's motion to dismiss the employees and granted appellant's voluntary nonsuit of Arlington. Appellant's motion for new trial was overruled by operation of law, and he timely filed his notice of this appeal.

## The Dismissal of Appellant's Claims

In his first two issues, appellant asserts that his claims, at least those founded upon 42 U.S.C. § 1983 (2003) (section 1983), were improperly dismissed by the trial court. The trial court dismissed the claims against appellees solely because of the election of remedies provision in section 101.106(e).[4]

### State law claims

While appellant's petition in the trial court clearly brought claims under both Texas and federal law, in his appeal, through many references in his brief, appellant characterizes all of his claims as arising exclusively under section 1983, a federal statute. For instance, in the titles of his first two issues, he asserts a "deprivation of his civil and Constitutional rights under color of law [under section 1983]." And in his prayer, he asks us to remand this case "with

---

[4] Appellant also discusses issues related to qualified immunity and the standards for prevailing in a section 1983 claim, but the parties did not litigate those issues in the trial court.

instructions establish[ing] [section 1983] as the 'law of the case.'" Because the trial court's order dismissed all of appellant's claims against appellees and because appellant now claims only federal law causes of action and does not assert any error related to the trial court's dismissal of his state law claims, we affirm the trial court's dismissal of his state law claims. *See Jacobs v. Satterwhite*, 65 S.W.3d 653, 655 (Tex. 2001); *McCoy v. Rogers*, 240 S.W.3d 267, 272 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (indicating that appellate courts should affirm a trial court's unchallenged decisions).

**Section 1983 claims**

Therefore, our review is limited to determining whether the trial court properly dismissed appellant's section 1983 claims against appellees. Section 101.106 of the civil practice and remedies code, part of the Texas Tort Claims Act, states in relevant part,

> (a) The filing of a suit *under this chapter* against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter.
>
> . . . .
>
> (e) If a suit is filed *under this chapter* against both a governmental unit and any of its employees, the employees shall

8

immediately be dismissed on the filing of a motion by the governmental unit.

Tex. Civ. Prac. & Rem. Code Ann. § 101.106(a), (e) (emphasis added); *see id.* §§ 101.001–.109 (Vernon 2005 & Supp. 2009). We have not found any opinion from our court addressing the applicability of section 101.106 to federal section 1983 claims. When reviewing a question of law related to a dismissal under section 101.106, Texas courts have applied a de novo standard of review. *See Singleton v. Casteel*, 267 S.W.3d 547, 550 (Tex. App.—Houston [14th Dist.] 2008, pet. denied); *Turner v. Zellers*, 232 S.W.3d 414, 418 (Tex. App.—Dallas 2007, no pet.); *Kanlic v. Meyer*, 230 S.W.3d 889, 892 (Tex. App.—El Paso 2007, pet. denied).

In 2003, the legislature amended section 101.106 of the civil practice and remedies code as part of comprehensive tort reform. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 656 (Tex. 2008). Section 101.106 forces a plaintiff to decide whom he will sue—the governmental entity or the employee. *Id.* at 657; *Tex. Bay Cherry Hill, L.P. v. City of Fort Worth*, 257 S.W.3d 379, 398 (Tex. App.—Fort Worth 2008, no pet.) ("By requiring a plaintiff to make an irrevocable election at the time suit is filed between suing the governmental unit under the Tort Claims Act or proceeding against the

employee alone, section 101.106 narrows the issues for trial and reduces delay and duplicative litigation costs.").

Section 1983 provides a civil cause of action for the deprivation of an individual's federal statutory or constitutional rights:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

42 U.S.C. § 1983; *see Felder v. Casey*, 487 U.S. 131, 139, 108 S. Ct. 2302, 2307 (1988) (explaining that section 1983 "creates a species of liability"). Thus, for a plaintiff to assert a claim under section 1983, he must show that "(1) the conduct complained of was committed by a person acting under color of state law, and (2) the conduct deprived [that plaintiff] of rights, privileges, or immunities secured by the Constitution, or the laws, of the United States." *Leachman v. Dretke*, 261 S.W.3d 297, 305 (Tex. App.—Fort Worth 2008, no pet.) (op. on reh'g).

Section 1983 provides a separate and distinct legal basis from the Tort Claims Act for challenging the actions of a governmental employee. *See Thomas v. Allen*, 837 S.W.2d 631, 632–33 (Tex. 1992); *Brand v. Savage*, 920 S.W.2d 672, 675 (Tex. App.—Houston [1st Dist.] 1995, no pet.) ("Moreover,

state and federal constitutional claims are not barred by immunity. For example, appellant could have circumvented the Tort Claims Act and its effects by bringing a claim for violation of her constitutionally protected rights under 42 U.S.C. § 1983."). "Section 1983 imposes liability for violations of rights protected by the United States Constitution, not for violations of duties of care arising under tort law." *Leo v. Trevino*, 285 S.W.3d 470, 479 (Tex. App.—Corpus Christi 2006, no pet.) (citing *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450 (5th Cir.), *cert. denied*, 513 U.S. 815 (1994)); *see also Albright v. Oliver*, 510 U.S. 266, 271, 114 S. Ct. 807, 811 (1994) (explaining that section 1983 provides a "method for vindicating federal rights").

As we emphasized above, section 101.106(e) only permits a governmental entity to obtain the dismissal of its employees from suits filed "under this chapter"—the Texas Tort Claims Act—not for claims arising under another statutory basis, such as section 1983. Tex. Civ. Prac. & Rem. Code Ann. § 101.106(e). While "under this chapter" encompasses more claims than just those to which the Tort Claims Act waives immunity—for instance, intentional torts may be "under this chapter" even though the Act does not waive immunity for such torts—it does not include claims based on alternate, independent statutes that waive sovereign or governmental immunity. *See Garcia*, 253 S.W.3d at 659 (explaining that claims arising under the Texas

11

Commission on Human Rights Act do not arise under the Tort Claims Act, and therefore section 101.106(e) is inapplicable to those claims); *Kelemen v. Elliott*, 260 S.W.3d 518, 523 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (relying on *Garcia* to hold that claims brought under the Texas Whistleblower Act are not claims under the Tort Claims Act, and section 101.106(e) therefore does not apply to such claims).

Local governments and their employees may be liable under federal section 1983; governmental immunity does not shield them from such suits. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690–91, 98 S. Ct. 2018, 2035–36 (1978); *Ogletree v. Glen Rose Indep. Sch. Dist.*, 226 S.W.3d 629, 633 (Tex. App.—Waco 2007, no pet.). In *Whitesell v. Newsome*, the Houston (14th District) Court of Appeals specifically held that a section 1983 suit is not "under this chapter" for the purposes of applying section 101.106. 138 S.W.3d 393, 396 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). That court explained,

> [Whitesell] argues that the federal court's judgment . . . dictates that he is immune from Newsome's lawsuit pursuant to section 101.106 of the Civil Practice and Remedies Code. Whitesell's argument fails because the basis for the federal court's order was that [a school district] was not liable under section 42 U.S.C. § 1983; the court did not rule that [the district] was not liable pursuant to the Texas Tort Claims Act. Section 101.106 of the Civil Practice and Remedies Code provides as follows: "A judgment in an action or a settlement of a claim *under this*

12

*chapter* bars any action involving the same subject matter by the claimant against the employee of the governmental unit whose act or omission gave rise to the claim."

*Id.*; *see also Gonzalez v. Saenz*, No. 04-05-00525-CV, 2006 WL 622578, at *3 (Tex. App.—San Antonio Mar. 15, 2006, no pet.) (mem. op.) (also holding that a section 1983 suit is not "under this chapter" for the purposes of section 101.106's election of remedies).

Appellees rely on the Corpus Christi Court of Appeals's decision in *Walton v. Texas Department of Criminal Justice* for the proposition that section 101.106's election of remedies applies to section 1983 claims. No. 13-07-00656-CV, 2008 WL 3868113, at *2 (Tex. App.—Corpus Christi Aug. 21, 2008, pet. denied) (mem. op.). But the dismissal of the plaintiff's section 1983 claim in that case was not because of section 101.106, but because the "TDCJ is a unit of the State government" and is therefore not subject to a section 1983 claim. *Id.*

During oral argument, appellees also relied on *Alcala v. Texas Webb County* to support their argument that appellant's section 1983 claims should be dismissed under section 101.106. 620 F. Supp. 2d 795, 804–05 (S.D. Tex. 2009). But in *Alcala*, a federal district court dismissed state common law claims under section 101.106(e), not claims based on a federal statute. *See id.*

For these reasons, like the Houston (14th District) and San Antonio courts, we hold that section 101.106(e) of the civil practice and remedies code, which applies to only suits brought under the Tort Claims Act, does not apply to federal section 1983 claims. Because section 101.106(e) does not apply to claims under section 1983, the trial court erred by dismissing those claims on the appellees' statutory election of remedies basis.[5] Therefore, we sustain appellant's first two issues as they relate to the trial court's dismissal of his section 1983 claims against appellees that are contained in each of the eight "CLAIM FOR RELIEF" portions of his petition.[6]

**Claims against Arlington**

Finally, some statements in appellant's brief and reply brief request that we reverse the trial court's order dismissing his claims against Arlington, which he affirmatively requested by nonsuiting those claims. *See* Tex. R. Civ. P. 162. For instance, appellant asserts that appellees' "erroneous pleadings that forced

---

[5] We express no opinion on whether appellant's section 1983 claims have legal or factual merit. We only hold that section 101.106, relied on by appellees as the sole basis for the dismissal of appellant's federal claims, cannot support that dismissal.

[6] Because appellant's remaining two issues and his prayer also relate to his request that we reverse the trial court's order as it pertains to his section 1983 claims against appellees, and we have already determined that such reversal should occur, we need not address the substance of those two issues. *See* Tex. R. App. P. 47.1; *Hawkins v. Walker*, 233 S.W.3d 380, 395 n.47 (Tex. App.—Fort Worth 2007, pet. denied).

14

[him] into non-suiting [Arlington] in an abundance of caution amount to nothing less than a material misrepresentation . . . for which justice demands correction." Also, he states in his reply brief that the reversal of Arlington's dismissal is a "question to be settled in the future" and is a "procedural matter within the discretion of" our court or the trial court.

A party cannot request specific action from a trial court and then later complain on appeal when the court has ruled as requested. *See In re Dep't of Family & Protective Servs.*, 273 S.W.3d 637, 646 (Tex. 2009). Furthermore, appellant has not cited any authority related to his requested reversal of Arlington's dismissal on a theory of fraud or material misrepresentation. We conclude that, to the extent that appellant's issues challenge the trial court's order dismissing Arlington in accordance with his nonsuit of Arlington, those issues are waived by the invited error doctrine and by inadequate briefing. *See* Tex. R. App. P. 38.1(i); *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994); *Gray v. Nash*, 259 S.W.3d 286, 294 (Tex. App.—Fort Worth 2008, pet. denied).

**Conclusion**

Because we have sustained appellant's first two issues as they relate to claims he pled against appellees under section 1983, we reverse the trial court's order dismissing those claims and remand this case to the trial court for

15

further proceedings related to those claims.  For the reasons stated above, however, we affirm the trial court's orders to the extent that they dismissed appellant's state law claims against appellees and dismissed all of the claims against Arlington.

TERRIE LIVINGSTON
JUSTICE

PANEL:  LIVINGSTON, MCCOY, and MEIER, JJ.

DELIVERED:  October 8, 2009

16